# STATE v. JOSEPH GILBERT.[1]

December 20, 1918.

No. 21,089.

**War — discouraging enlistment — intent.**

1. Intent is not an ingredient of the offense created by chapter 463, Laws of 1917.

**Same — assertions quoted in indictment constitute violation of statute.**

2. The statements which the indictment charges defendant with making, if believed, would naturally and reasonably deter enlistment and giving of aid in the war; and constitute a violation of the statute.

**Same — question for jury — evidence.**

3. The evidence made the question as to whether defendant had committed the offense, a question for the jury and is sufficient to sustain the verdict.

**Same — remarks of auditors admissible.**

4. Remarks made by members of the audience during defendant's speech, to which defendant made reply, were properly admitted in evidence in connection with such replies.

**Same — when leading questions are inadmissible.**

5. Leading questions, not otherwise admissible, are not made admissible by the claim that the purpose is to impeach an adverse witness to whom the same questions had been propounded, if the answer could have no tendency to prove that the adverse witness ever made any statement inconsistent with his testimony.

**Same — statute valid.**

6. That the statute, including section 3, is constitutional has been established by prior decisions.

Defendant was indicted by the grand jury of Goodhue county charged with the crime of discouraging enlistment in the military and naval forces of the United States, tried in the district court for that county before Johnson, J., and a jury, and found guilty as charged in the in-

[1]Reported in 169 N. W. 790.

dictment. Defendant's motion for a new trial was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*George Nordlin, Thomas V. Sullivan, Frederic A. Pike* and *Arthur Le Sueur,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham* and *John E. Palmer,* Assistant Attorneys General, and *Thomas A. Mohn,* County Attorney, for respondent.

TAYLOR, C.

A public meeting, called by Louis W. Martin, an organizer for the Nonpartisan League, was held at the village of Kenyon in the county of Goodhue, on the evening of August 18, 1917. Some 200 people attended. Two officers of the league, N. S. Randall and the defendant, were present and made speeches. Defendant was subsequently convicted of having violated chapter 463, p. 764, of the Laws of 1917, by teaching and advocating, in the speech which he made at this meeting, that men should not enlist in the military or naval forces of the United States, and that citizens of this state should not aid the United States in prosecuting the war against the public enemies. He appealed to this court from the judgment.

The indictment charges that on the eighteenth day of August, 1917, at the village of Kenyon in the county of Goodhue, at a public place where more than five persons were assembled, defendant did "unlawfully and wilfully teach and advocate by word of mouth and oral speech that men should not enlist in the military and naval forces of the United States, and that the citizens of the State of Minnesota should not assist the United States in prosecuting and carrying on war with the public enemies of the United States," by then and there stating to those assembled: "We are going over to Europe to make the world safe for democracy, but I tell you we had better make America safe for democracy first. You say, what is the matter with our democracy. I tell you what is the matter with it: Have you had anything to say as to who should be President? Have you had anything to say as to who should be Governor of this state? Have you had anything to say as to whether we should go into this war? You know you have not. If this is such a great democracy, for Heaven's sake why should we not vote on con-

scription of men. We were stampeded into this war by newspaper rot to pull England's chestnuts out of the fire for her. I tell you if they conscripted wealth like they have conscripted men, this war would not last over forty-eight hours."

1. Defendant contends that this indictment is defective because it fails to allege that in speaking the words set forth therein he intended to discourage enlistment and the giving of aid.

The statute makes teaching or advocating nonenlistment or nonaid unlawful. It does not make the intent of the teacher or advocate an ingredient of the offense. The statute is a police regulation, and, under it, the doing of the forbidden act is a criminal offense regardless of the intent. State v. Sharp, 121 Minn. 381, 141 N. W. 526; State v. Lundgren, 124 Minn. 162, 144 N. W. 752, Ann. Cas. 1915B, 377; State v. People's Ice Co. 124 Minn. 307, 144 N. W. 962.

2. Defendant also contends that the statements set forth in the indictment do not constitute a violation of the statute.

The question is whether the natural and reasonable effect of the statements uttered is to deter those to whom they were made from enlisting in the military or naval forces and from aiding the United States in carrying on the war. State v. Holm, 139 Minn. 267, 166 N. W. 181, L.R.A. 1918C, 304; State v. Freerks, 140 Minn. 349, 168 N. W. 23.

The declaration that the world must be made safe for democracy had been acclaimed throughout the entire country as expressive of our purpose in the war. Defendant used a reference to this sentiment as a basis for casting aspersions upon the democracy of our own country. And after declaring in effect that his hearers had had nothing to say as to whether we should go into this war, and that, if this country was a democracy, we ought to vote on the question of conscription, he asserted: "We were stampeded into this war by newspaper rot to pull England's chestnuts out of the fire for her. I tell you if they conscripted wealth like they have conscripted men, this war would not last over forty-eight hours." We think that people who heard these statements uttered, if they believed them to be true, would naturally and reasonably conclude that this country had been brought into the war needlessly, through improper excitement created by the unfounded clamor of newspapers

acting in the interest of a foreign country; that the wealth of the country, if it were not unduly favored at the expense of the man-power of the country, would quickly end the war; and that the purpose of the war and the methods of the government in carrying it on did not deserve their support. State v. Freerks, 140 Minn. 349, 168 N. W. 23.

3. Defendant insists that the evidence does not justify the verdict.

At the trial, he denied making the statements charged, and claimed, and produced evidence tending to show, that the statements made were to the effect that we should use all the resources of the country to bring the war to a successful and speedy end. On the other hand, several members of the audience, one of whom made some notes at the time, testified positively that defendant made the statements charged and did not make the statements which he claimed to have made. Defendant argues that persons who hear statements usually remember them so imperfectly that they are unable to repeat them accurately at a subsequent time, and for that reason that the evidence for the state should not be allowed to outweigh the evidence in his favor. The weight to be given to the testimony of the several witnesses was for the jury to determine in the light of all the attending circumstances, and as they have found the testimony presented by the state to be true, there is no ground for the court to say that the verdict is not warranted by the evidence.

4. Several errors are assigned in respect to the admission and exclusion of evidence.

An attentive examination of the record shows that, throughout the trial, the court was careful to exclude all improper evidence prejudicial to defendant, and to receive all proper evidence tendered by him, and we find no errors in the rulings.

The remarks made at the meeting by members of the audience, of which testimony was admitted over objection, were not mere outside remarks made by bystanders, but were so connected with defendant's speech by the fact that he recognized them as in the nature of heckling and made answer to them, that the evidence was correctly admitted in connection with such answers.

The court applied the rule forbidding leading questions with some strictness, but did not infringe the rights of defendant, nor hamper him in the presentation of his defense. These rulings went only to the

form of the questions, and defendant was permitted to reframe them and elicit the information sought. He insists, however, that several of the excluded questions were proper under the rule which permits leading questions when the purpose is to impeach an adverse witness. On cross-examination he had asked witnesses for the state if, in his speech, he had not made certain statements which he repeated to them, and they had testified that he had not. Without any attempt to show that they had ever made statements inconsistent with their testimony, he claimed the right to impeach them by putting the same questions in the same form to his own witnesses. These were not impeaching questions within the meaning of the rule. The answers to them, at most, could only contradict the witnesses for the state, and could have no tendency to show that such witnesses had ever given any other or different version of the matter than they gave at the trial. While these questions were excluded, and properly so, both he and his witnesses were permitted to testify fully as to what he had said in his speech.

5. The validity of the statute, including the validity of section 3, as against the constitutional objections urged, has been established by prior decisions. State v. Kaercher, supra, page 186, State v. Townley, 140 Minn. 413, 168 N. W. 591; State v. Holm, 139 Minn. 267, 166 N. W. 181, L.R.A. 1918C, 304.

We find nothing in the remaining assignments of error requiring special mention.

Judgment affirmed.